UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| THOMAS WILSON and RANDY BROWN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WARREN COUNTY, ILLINOIS, MARTIN ) <br> EDWARDS, individually and in his capacity ) <br> as Sheriff of Warren County, Illinois, ) <br> THOMAS CARITHERS, individually and in ) <br> his capacity as Sheriff's Deputy of Warren ) <br> County, Illinois, ALBERT ALGREN, ) <br> individually and in his capacity as State's ) <br> Attorney of Warren County, Illinois, ) <br> RONALD HANSON, MARK JOHNSON, ) <br> and DOUGLAS REINERS, ) <br> ) <br> Defendants. ) | Case No. 4:11-cv-04078-SLD-JAG |

<u>ORDER</u>

Plaintiffs Thomas Wilson and Randy Brown allege in Count I that Defendants Ronald Hanson, Mark Johnson, and Douglas Reiners (collectively, the "Private Defendants") violated 42 U.S.C § 1983 by depriving them of various constitutional rights. Even though the Private Defendants are private individuals, Plaintiffs allege that they acted under color of state law by acting in concert with three government officials ("Public Defendants"). Wilson separately alleges in Count II that the Private Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 et seq., by interfering with his enjoyment of his residence on account of his behavioral disorders. At issue is the Private Defendants' Motion to Dismiss, ECF No. 46. For the reasons set forth below, the Private Defendants' Motion to Dismiss is Denied as to Count I and Granted as to Count II.

**BACKGROUND**

At the motion to dismiss stage, the Court must take "all facts alleged in the complaint to be true . . . without, of course, vouching for their accuracy." *Hanania v. Loren-Maltese*, 212 F.3d 353, 355 (7th Cir. 2000). Plaintiff Thomas Wilson and Defendant Ronald Hanson, along with another individual, were business partners. Hanson invested not only cash in the business, but also equipment and machinery. When the business started losing money, a bank repossessed most of the equipment that Hanson had invested. Hanson blamed Wilson for the failure of their business.

On April 16, 2009, after Wilson and Hanson began to dissolve their business partnership, the third partner accused Hanson of failing to account for some of the business's revenues. To resolve this dispute, the third partner offered to buy out Hanson if Hanson would agree to give Wilson a bill of sale for property that Hanson had invested or promised to invest into the business. Hanson agreed, and Wilson drafted a bill of sale with blank lines because Wilson and Hanson agreed to determine which items would be included at a later date.

On approximately April 24, 2009, police arrested Hanson for an unrelated criminal charge. Wilson met with Hanson at the jail, where they discussed several matters. First, Wilson agreed to raise money for Hanson's bail by selling equipment and machinery that Hanson owned separately from the business. Second, they agreed on which items Wilson would include on the blank bill of sale. Hanson signed the still-blank bill of sale, and Wilson later filled in the blanks with the items both men had just agreed on. Third, Hanson signed a written document authorizing Wilson to enter Hanson's property to collect certain items that Wilson owned.

After the meeting, Wilson searched for someone to buy Hanson's property in order to raise bail money for Hanson. While Wilson was searching, Hanson hired a lawyer, Defendant

2

Mark Johnson, who successfully reduced Hanson's bail to $1,000. Wilson found a buyer who agreed to pay $2,000 for a piece of Hanson's machinery. Strangely, Wilson allowed the buyer to simply post Hanson's bail in exchange for the machine.

After Hanson was released from jail, Hanson objected to Wilson having retrieved items stored on Hanson's property despite having authorized Wilson to do so in writing. Hanson demanded that Wilson return the items, but Wilson refused, claiming that they were his own items.[1] Frustrated with Wilson's refusal, Hanson told a third party that he would sue Wilson "when the time is right" and that he would "proceed at a rate my lawyer recommends." Hanson wanted those items back and, as the story unfolds, he would soon get his chance to take them back.

Around this time, Wilson occupied three properties. On August 26, 2009, Defendant Martin Edwards, the Sheriff of Warren County, inspected two of the properties that Wilson occupied because the sheriff's department had received complaints about junk and debris on the properties. After inspecting the two locations, Sheriff Edwards determined that Wilson owned neither property: Hanson owned one and Dennis Gulseth owned the other. After responding to the complaints, Sheriff Edwards reported to the Warren County State's Attorney's Office that the condition of the two properties violated a county junk and debris ordinance. The Warren County State's Attorney's usual practice is to notify property owners when their conduct potentially violates county property ordinances, thus affording property owners time to comply with the ordinances. But instead of notifying both property owners, on September 15, 2009, Defendant Albert Algren, the Warren County State's Attorney, sent a letter to Hanson, but not Gulseth,

---

[1] The complaint is not clear on whether the items that Hanson wanted Wilson to return are the same items that they included in the bill of sale.

3

stating that the junk and debris on these two properties violated a county ordinance, and that he must clean them up.

On September 22, 2009, Defendant Douglas Reiners, an employee of Hanson and Johnson, approached Wilson at one of the properties and asked if Wilson owned "all the stuff here," and Wilson responded that he did and that Hanson owned nothing on the properties. Later that day, the Private Defendants entered onto Wilson's three properties despite his objections. This apparently created a stressful situation. Wilson suffers from obsessive compulsive disorder ("OCD") and conversion disorder. Stressful situations trigger Wilson's disorders and result in his physical incapacitation. Hanson knew that Wilson suffers from these disorders as well as how to trigger their disabling effects, all of which he shared with Johnson and Reiners. This particularly stressful event triggered Wilson's OCD and conversion disorder, which caused Wilson to become physically incapacitated. Defendant Thomas Carithers, a Deputy Sheriff of Warren County, arrived on the scene just before an ambulance took Wilson away. Wilson's friend, Plaintiff Randy Brown, was now present as well and, after seeing Wilson off in the ambulance, told the Private Defendants to leave Wilson's property. Initially, they refused to leave, but eventually they left.

Three days later, Gulseth—the owner of one of the properties—spoke with State's Attorney Algren because he was concerned about Wilson's well-being as well as the Private Defendants' unauthorized entries onto properties that Wilson occupied. State's Attorney Algren explained to Gulseth that the sheriff's department would stop future unauthorized entries, and Gulseth repeated this comment to Wilson. Later that day, however, Johnson met with State's Attorney Algren and told him that Hanson had filed a lawsuit against Wilson. Johnson also informed State's Attorney Algren that they would enter properties occupied by Wilson in

4

accordance with State's Attorney Algren's September 15 letter (the one instructing Hanson to clean up the properties).  Johnson asked State's Attorney Algren how he could obtain a civil stand-by from the sheriff's department, and Algren told him to contact the sheriff's department.  After meeting with State's Attorney Algren, Johnson communicated with the sheriff's department about getting a stand-by.

On September 26, 2009, the Private Defendants, along with several other associates, entered onto the three properties that Wilson occupied, including Wilson's residence located at 357 Railroad Street.  While there, Johnson followed Wilson around his property, making threats and claiming that he had authority to evict Wilson from the properties.  Johnson handed Wilson a purported notice of eviction and said, "we have taken the property back and if you do not leave I will have you arrested."  During this ordeal, Wilson alleges that he saw Johnson and Reiners take some of his personal belongings.  As a result of this stressful encounter, Wilson became partially physically incapacitated again.  Wilson then called the sheriff's department for assistance after repeatedly asking the Private Defendants and their associates to leave.  Deputy Sheriff Carithers responded to Wilson's request for assistance.  When Deputy Sheriff Carithers arrived, Wilson told him that the Private Defendants and their associates were on his property without authorization.  Johnson told Deputy Sheriff Carithers that he and his associates were there to "clean up these properties."

Wilson requested that Deputy Sheriff Carithers speak with State's Attorney Algren.  Deputy Sheriff Carithers called Algren from the scene, and Algren either told him that Hanson already had a court order to seize Wilson's property or that Hanson needed a court order to seize Wilson's property.  In any case, Deputy Sheriff Carithers relayed State's Attorney Algren's remarks to Wilson, who then requested that Carithers ask to see Johnson's court order.  Johnson

handed a stack of papers to Deputy Sheriff Carithers, who briefly looked at only the first two pages before handing the papers back to Johnson. Wilson asked and was allowed to inspect the papers as well. Johnson and his associates then started taking Wilson's belongings. There was, in fact, no court order to seize any property. Wilson threatened to stop the Private Defendants and their associates from taking his personal property. At this point, Deputy Sheriff Carithers uncrossed his arms and moved his hand toward his gun and said to Wilson, "if you try anything you will go to jail."

These events further exacerbated the effects of Wilson's disorders, resulting in his physical incapacitation. With the help of a friend, Wilson went inside his residence. Once inside, one of Johnson's associates started up Wilson's pickup truck. Wilson rushed out to protest. But Wilson's friend again took Wilson back inside. When Wilson was back in his residence, Hanson started up Wilson's forklift truck. Wilson again rushed outside and this time tried to stop Hanson by climbing onto the forklift. Wilson, however, was too physically incapacitated to stop Hanson from driving the forklift. As Wilson walked away from his forklift, he saw Deputy Sheriff Carithers nodding back at Johnson. Johnson and his associates then continued removing Wilson's personal property. When they reached a second forklift truck, Wilson explained that it belonged to Brown and asked that they not take it. But after the Private Defendants and their associates left that day, Brown's forklift was missing.

On October 6, 2009, Hanson, Johnson, and/or Reiners again entered onto the properties that Wilson occupied, without his consent, and either removed or destroyed property that belonged to Wilson. One of Wilson's neighbors contacted the sheriff's department to report a trespass. Sheriff Edwards responded to the call, but before he arrived at the scene, Hanson had already loaded some of Wilson's belongings onto his pickup truck. When Sheriff Edwards

arrived, he saw Hanson at the door of Wilson's property as well as his truck parked near the same door. Sheriff Edwards saw Hanson moving an electric motor that belonged to Wilson and asked him to stop what he was doing and leave the motor on the premises. Sheriff Edwards, however, did not ask Hanson to return any items that were already in his truck.

Finally, on December 26, 2009, the Private Defendants and their associates again entered onto property occupied by Wilson. They took additional property that belonged to Wilson and placed other property into dumpsters.

## DISCUSSION

### I. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) does not resolve the merits of a particular claim. Instead, it tests only the sufficiency of the allegations set forth in the complaint. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A court will accept the factual allegations in the complaint as true, but they must give "'fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). In sum, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In ruling on a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, the facts set forth in the complaint are viewed "in the light most favorable to the nonmoving party." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 463 (7th Cir. 2010). Facts in the complaint that disprove the asserted claim should be considered, and the court need not accept unsupported conclusions of law. *N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (citing *Twombly*, 550 U.S. 544 (2007)) (conclusory allegations are "not entitled to be assumed true").

## II. Deprivation of Civil Rights Claim (Count I)

Plaintiffs make three claims under 42 U.S.C. § 1983 against the Private Defendants. First, Plaintiffs claim that the Private Defendants violated their Fourth Amendment right to be free from unreasonable seizures. Second, they claim that the Private Defendants violated their Fourteenth Amendment right to substantive due process. Third, they claim that the Private Defendants violated their Fourteenth Amendment right to procedural due process. Under section 1983, "a plaintiff must sufficiently allege that (1) a person acting under the color of state law (2) deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745–46 (7th Cir. 2010) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Private Defendants move to dismiss on the ground that they cannot be held liable under section 1983 because they were not acting under color of state law.

Defendants in section 1983 claims are typically government officials because section 1983 applies to individuals who act under color of state law. *See Payton v. Rush-Presbyterian-*

*St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999).  But private individuals who act under color of state law may also be subject to section 1983 liability.  *See Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).  "A private individual has acted under color of law if there was a concerted effort between the individual and a state actor." *Id.* (citing *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.), *cert. denied*, 525 U.S. 930 (1998)).  To establish that a private individual engaged in a concerted effort with a state actor, a plaintiff must demonstrate that (1) "the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights," and (2) "the private individual was a willful participant in joint activity with the state or its agents."  *Id.*  A claim that private individuals and government officials engaged in concerted action to deprive someone of his constitutional rights must be supported by "factual allegations showing a meeting of minds."  *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982).  While a plaintiff need not allege facts showing that private individuals and government officials entered into an express agreement, vague and conclusory allegations of concerted action are insufficient to survive a motion to dismiss.  *See id.*; *Cooney v. Casady*, Nos. 10–3842, 11–1757, 2013 WL 4406668, at *4 (7th Cir. Aug. 19, 2013) (citing *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998)).

Hanson and Johnson raise one argument for why the Court should dismiss Plaintiffs' section 1983 claims against them; accordingly, the Court only addresses this argument.  Hanson and Johnson argue that they did not engage in concerted action with the Public Defendants, and therefore did not act under color of law, because, at the time they entered onto Wilson's property and took his belongings, they had an adversarial relationship with each of the Public Defendants.  The relationship was adversarial because Johnson was representing Hanson in a criminal case that the Public Defendants were in the process of prosecuting.  Hanson and Johnson argue that

9

this confrontational relationship foreclosed the possibility of a conspiracy with the Public Defendants to deprive Plaintiffs of their civil rights. But the conclusion (no conspiracy) does not follow from the premise (that they were adverse to the Public Defendants). Simply because parties are adverse to one another in one context does not foreclose the possibility that they can work together in another. *See Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 880–81 (2d Cir. 1988) (holding that allegations of concerted action between police officials and a police officers' union sufficiently stated a claim under section 1983). The Court therefore rejects Hanson and Johnson's argument for dismissal.

Reiners moves to dismiss Plaintiffs' section 1983 claims solely on the basis that he never communicated with any of the Public Defendants and therefore could not have acted under color of law. But the law is clear that a private individual does not need to know the full extent of the conspiratorial agreement or the identities of all participants to be liable under section 1983. *See, e.g, Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836, 841 (7th Cir. 1984) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), rev'd in part, 446 U.S. 754 (1980)). The Court therefore rejects Reiner's argument as legally incorrect. Accordingly, the Private Defendants' motion to dismiss Count I is DENIED.

### III. Housing Discrimination Claim (Count II)

Wilson claims that the Private Defendants violated the Fair Housing Act, 42 U.S.C. §§ 3601–3619. Section 3617 of the Fair Housing Act makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by" section 3604. 42 U.S.C. § 3617. Section 3604 makes it unlawful for a person to "make unavailable or deny[] a dwelling to any buyer or renter because of" a handicap that the buyer or renter has. *Id.* § 3604(f)(1)(A). While Fair Housing Act claims frequently involve discrimination that occurred when a plaintiff was trying to purchase or rent a dwelling, the Fair

Housing Act also permits a plaintiff to hold a defendant liable for unlawfully interfering with his enjoyment of his dwelling after purchasing it. *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 562 (7th Cir. 2005). Interference means more than just a "quarrel among neighbors" or an "isolated act of discrimination;" instead, interference is a "pattern of harassment, invidiously motivated." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (quoting *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004)). Dwelling includes "any building, structure, or portion thereof which is occupied as . . . a residence." 42 U.S.C. § 3602(b).

Although Wilson's complaint adequately alleges the identities of the individuals that he believes discriminated against him as well as when the alleged discriminatory conduct occurred, he fails to allege sufficient facts regarding intentional discrimination. Wilson falls short of stating a claim because his allegations do not plausibly show that the Private Defendants engaged in intentional discrimination and do not raise a disparate impact theory. *See Bloch*, 587 F.3d at 784 (explaining discriminatory intent or disparate impact theory is required to prove discrimination under section 3604). While the complaint alleges that the Private Defendants knew about Wilson's disorders as well as how to trigger their disabling effects, the allegations that Johnson threatened Wilson and ordered him off his own property do not show that Johnson (or even Hanson and Reiners) harassed him ***because*** he had OCD and conversion disorder. Instead, Wilson's allegations only show that the Private Defendants acted for other reasons.

The allegations suggest that Hanson was motivated to act because he was upset with Wilson for several reasons. First, Hanson blamed Wilson for the failure of their business partnership. Second, Hanson was likely unhappy when Wilson sold a piece of Hanson's machinery for $2,000, but only charged the buyer $1,000. Third, Hanson was upset that Wilson

11

refused to return items that he collected from Hanson's property. Conversely, no allegations indicate that the Private Defendants harbored animus toward Wilson's disorders; the allegations suggest that Hanson's displeasure with Wilson, and possible desire to retrieve property that he felt was rightfully his, were the only reasons for Hanson's actions.[2]

## CONCLUSION

For the reasons set forth above, the Court GRANTS-IN-PART and DENIES-IN-PART the Private Defendants' Motion to Dismiss, ECF No. 46. For the reasons stated herein, the motion is DENIED with respect to Count I of the complaint and GRANTED with respect to Count II of the complaint.

Entered this 30th day of September, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

---

[2] The Private Defendants also move to strike factual allegations in the complaint as time-barred. This lawsuit was filed on September 26, 2011, making the critical date September 26, 2009. *See Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993); *Mihelic v. Will County*, 826 F. Supp. 2d 1104, 1111 (N.D. Ill. 2011); 42 U.S.C. § 3613. Because Wilson's FHA claim is dismissed, the Private Defendants' motion to strike based on that cause of action is moot. Regarding Plaintiffs' § 1983 claim, Plaintiffs do not—and cannot—rely on events that took place before September 26, 2009, to form the basis of any cause of action. But striking factual allegations—allegations that do not form the basis for any cause of action—from a complaint as time-barred is unnecessary. Thus, the Court denies the Private Defendants' motion to strike factual allegations.