

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| THOMAS WILSON and RANDY BROWN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-04078-SLD-JEH |
| | ) | |
| WARREN COUNTY, ILLINOIS, MARTIN EDWARDS, individually and in his capacity as Sheriff of Warren County, Illinois, THOMAS CARITHERS, individually and in his capacity as Sheriff's Deputy of Warren County, Illinois, ALBERT ALGREN, individually and in his capacity as State's Attorney of Warren County, Illinois, RONALD HANSON, MARK JOHNSON, and DOUGLAS REINERS, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiffs request that the Court reconsider its order dismissing their claims against Defendants Ronald Hanson, Mark Johnson, and Douglas Reiners ("Private Defendants") under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, in Count II of their Amended Complaint. Sept. 30, 2013 Order, ECF No. 54. In the alternative, Plaintiffs' request leave to amend the Complaint to address the deficiencies the Court highlighted. For the following reasons, Plaintiffs' Motion for Reconsideration, ECF No. 59, is DENIED, as is leave to amend the Complaint.

**BACKGROUND**

The Court recounted the Plaintiffs' factual allegations in detail in its Order of September 30, 2013, ECF No. 54. Based on the limited scope of the instant motion, the Court provides here

1

only a brief summary of relevant allegations.[1] Plaintiff Thomas Wilson and Defendant Ronald Hanson were business partners in a failing enterprise, a failure for which Hanson blamed Wilson. Wilson suffered from obsessive compulsive disorder ("OCD") and conversion disorder, medical conditions which caused his temporary physical incapacitation in stressful situations, which the Private Defendants knew. When dissolving their partnership, Hanson agreed that Wilson would keep a number of items and equipment. After his release from jail on an unrelated matter, Hanson objected to Wilson having retrieved items stored on Hanson's property despite having authorized Wilson to do so in writing. Hanson demanded that Wilson return the items, but Wilson refused, claiming that they were his.

Around this time, Wilson occupied three properties. On August 26, 2009, Defendant Martin Edwards, the Sheriff of Warren County, inspected two of the properties that Wilson occupied because the sheriff's department had received complaints about junk and debris on the properties. After inspecting the two locations, Sheriff Edwards determined that Wilson owned neither property: Hanson owned one and Dennis Gulseth owned the other. After responding to the complaints, Sheriff Edwards reported to the Warren County State's Attorney's Office that the condition of the two properties violated a county junk and debris ordinance. On September 15, 2009, Defendant Albert Algren, the Warren County State's Attorney, sent a letter to Hanson stating that the junk and debris on these two properties violated a county ordinance, and that he must clean them up.

On September 22, 2009, Hanson—along with his attorney, Defendant Mark Johnson, and his employee, Defendant Douglas Reiners—entered one of the properties Wilson occupied, without his permission, and confronted him. This created a stressful situation, causing Wilson to

---

[1] Because of the presumption of truth accorded to factual allegations at the motion to dismiss stage, the Court narrates Plaintiffs' account as it if was true, "without, of course, vouching for [its] accuracy." *Hanania v. Loren-Maltese*, 212 F.3d 353, 355 (7th Cir. 2000).

become physically incapacitated; he was taken away by ambulance. On September 26, 2009, the Private Defendants again entered Wilson's properties, including one where Wilson lived. Johnson followed Wilson around his residence, made threats, handed him a purported notice of eviction, and claimed that Wilson would be arrested if he did not leave. During this ordeal, Wilson saw Johnson and Reiners take some of his personal belongings. When Wilson resisted the Private Defendants' efforts to remove his belongings without court order, Defendant Deputy Sheriff Thomas Carithers—who Wilson had summoned—moved his hands toward his gun and threatened to take Wilson to jail. These events triggered Wilson's conditions, causing his partial physical incapacitation, which was further exacerbated when the Private Defendants and their crew began driving Wilson's vehicles off the property and removing other of Wilson's possessions. The Private Defendants entered the properties and removed Wilson's belongings on other occasions as well. The reaction of his OCD to the Defendants' actions compelled Wilson to cease occupying his residence.

Wilson and Plaintiff Randy Brown, who owned a forklift Defendants removed from Wilson's property, instituted this suit on September 26, 2011. They filed a seven-count Amended Complaint on July 12, 2012, alleging: (1) deprivation of civil rights; (2) housing discrimination; (3) intentional infliction of emotional and physical distress; (4) wrongful eviction; (5) trespass; (6) conversion; and (7) replevin. Am. Compl., ECF No. 39. On September 30, 2013, the Court dismissed Plaintiffs' FHA claims in Count II for failure to state a claim upon which relief may be granted. Sept. 30, 2013 Order 10–12. On February 28, 2014, Plaintiffs moved for reconsideration of the dismissal pursuant to Federal Rule of Civil Procedure 60(b) "because the Court committed clear error." Pls.' Mot. Recons. 1, ECF No. 59. This is the motion now before the Court.

**DISCUSSION**

I. **Legal Framework**

Federal Rule of Civil Procedure 60(b) permits the court to relieve a party from a final judgment, order, or proceeding based on specified grounds, which include mistake, excusable neglect, newly discovered evidence, fraud, or "any other reason that justifies relief." Fed. R. Civ. P. 60(b); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001). The Rule offers an "extraordinary" remedy and was "designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Rule 60(b) motions must address the specified grounds for modification and "cannot be general pleas for relief." *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992). Whether to correct mistakes under Rule 60(b) falls within a district court's discretion. *Russell*, 51 F.3d at 749.

Substance rather than form dictates which Rule governs a motion for reconsideration. *See Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Under Rule 54(b), an order adjudicating "fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Courts have the inherent power to reconsider non-final orders, as justice requires, before entry of judgment. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007).

Motions to reconsider interlocutory orders "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "A manifest error is not demonstrated by the disappointment of the losing party, instead it is the wholesale disregard,

misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted). Because the standards for reconsideration are exacting, this Circuit has stressed that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The Fair Housing Act prohibits "mak[ing] unavailable or deny[ing]" a dwelling to a person or discriminating "in the terms conditions, or privileges of sale or rental of a dwelling" because of the person's handicap. 42 U.S.C. § 3604(f)(1)-(2). Plaintiffs can prove discrimination under § 3604 by showing either intentional discrimination or, under certain circumstances, disparate impact. *Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009) (en banc). The FHA also makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" a right protected by § 3604. 42 U.S.C. § 3617. To prove a § 3617 violation, a plaintiff must show: "(1) she is a protected individual under the FHA, (2)

she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with [her] on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch*, 587 F.3d at 783.

When the deadline to amend a pleading as a matter of course has run, a party may only amend with the opposition's written consent or the court's leave. Fed. R. Civ. P. 15(a)(1)–(2). A court should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have discretion to deny leave "'if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002)). Futility occurs where the pleading as amended could not survive summary judgment. *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

**II. Analysis**

Plaintiffs argue for reconsideration on the grounds that the Court improperly (1) found that the Complaint did not support an inference that the Private Defendants engaged in their alleged misconduct "because of" Wilson's disability, and (2) "applied" *Bloch v. Frischolz* to a disability discrimination claim. Pls.' Mem. in Supp. Mot. Recons. 3–5, ECF No. 60. In other words, Plaintiffs argue that the Court erred in its legal reasoning. The Court may not award Rule 60(b) relief on the basis of mere legal error, and Plaintiffs do not cite one of Rule 60(b)'s specified grounds. *See Russell*, 51 F.3d at 749; *Deutsch*, 981 F.2d at 301. However, while Plaintiffs' style their request for relief from the Court's dismissal of one, but not all, of their claims as a Rule 60(b) motion, it is in substance a Rule 54(b) motion. *See Obriecht*, 517 F.3d at

493. The Court will therefore examine their arguments under Rule 54(b), where "manifest errors of law or fact" are grounds for relief. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.

### A. Inference of Intentional Discrimination

The Court held that, even though Plaintiffs alleged that the Private Defendants knew about Wilson's disorders and how to trigger their disabling effects, the allegations did not support a reasonable inference that the Defendants harassed Wilson *because of* his OCD and conversion disorder. Sept. 30, 2013 Order 10–11 (citing 42 U.S.C. § 3604(f)(1)(A) (forbidding "mak[ing] unavailable or deny[ing], a dwelling to any buyer or renter because of a handicap")). Plaintiffs argue that their allegations that Defendants preyed upon Wilson's medical vulnerabilities support an inference that they selected their means, if not their ends, in order to capitalize on Wilson's disability and therefore engaged in intentional discrimination on its basis. Pls.' Mem. in Supp. Mot. Recons. 3. Plaintiffs do not argue that this conclusion is entailed by newly discovered evidence or controlling precedent which the Court misapplied or ignored. *See Oto*, 224 F.3d at 606; *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. The closest Plaintiffs come is to quote a few, out-of-context phrases from *Bloch v. Frischholz*. Pls.' Mem. in Supp. Mot. Recons. 3–4.

In *Bloch*, the Blochs alleged that their condo association violated the FHA, 42 U.S.C. §§ 3604, 3617, by removing and threatening to fine the Blochs for posting mezuzot—Jewish religious decorations—on their condo unit's doorposts. 587 F.3d at 772–74. Because the Blochs failed to argue disparate impact at the district court level and therefore waived it on appeal, *Bloch* turned on discriminatory intent. *See id.* at 783–84. *Bloch* found sufficient evidence of intentional discrimination on the basis of the plaintiffs' Jewish status due to a combination of actions by the condo association. First, the court found that evidence that the condo association

7

reinterpreted and enforced its doorpost decoration rule in order to remove the Blochs' mezozot, despite the Blochs' repeated claims that Jewish law required them to hang the mezuzot, supported the inference that the condo association changed its rule "with Jews in mind." *Id.* at 785–86. Further, evidence supported an inference that the condo association president scheduled association meetings on Friday nights because Lynne Bloch could not attend then due to Jewish Sabbath observance law. *Id.* at 786. Finally, there was evidence that, after Marvin Bloch died, despite the association's agreement to the Blochs' request to post the mezuzot during the mourning period, the condo association removed the mezuzot while the family was literally attending the funeral, but left untouched other, secular objects in the hallway in similar violation of the rules. *Id.* Under these circumstances, the *Bloch* concluded, a trier of fact could find that the rule's reinterpretation and enforcement "was intended to target the only group of residents for which the prohibited practice was religiously required." *Id.* at 787.

Unlike the summary judgment disposition in *Bloch*, on a motion to dismiss, Plaintiffs need not show evidence of intentional discrimination. However, their allegations must give rise to a reasonable inference it existed. *Iqbal*, 556 U.S. at 678. With *Bloch* as their proferred standard, Plaintiffs' allegations fall short. Plaintiffs incorrectly imply that *Bloch* indicates that discrimination in choice of means, as opposed to ends, suffices. In *Bloch*, removal of the mezuzot was the defendants' end goal, not merely their means. Further, the discriminatory conduct in *Bloch* concerned an inherently religious object, and the Blochs claimed its removal harmed them by violating their religion's laws. By contrast, no plausible inference can be drawn that the Private Defendants' alleged actions to remove Wilson's belongings and drive him off the properties were at all related to his disability and would not have been taken against a non-disabled person in his position. *See Twombly*, 550 U.S. at 567 (holding that allegations were

8

insufficient where facts were at least equally consistent with lawful behavior). Even if the Defendants' actions were calculated to cause stress, stress discomforts and coerces anyone, disabled or not. While Wilson's particular medical susceptibility means he may have suffered more than the average person due to this stress, the Complaint does not support an inference that Defendants' conduct targeted Wilson in way unique to sufferers of OCD and conversion disorder. Absent a confluence of alleged circumstances anywhere comparable to those supporting an inference of intentional discrimination in *Bloch*, that case can hardly be considered "controlling precedent" that the Court disregarded. *Oto*, 224 F.3d at 606.

### B. Application of *Bloch v. Frishholz*

After citing *Bloch* in arguing that the Court missed inferences of intentional discrimination, Plaintiffs intriguingly next argue that the Court erred by applying *Bloch* in its dismissal order. Pls.' Mem. in Supp. Mot. Recons. 4. While never fully explained, Plaintiffs appear to take issue with the Court's citation of *Bloch* for the proposition that "interference" under § 3617 is a "pattern of harassment, invidiously motivated." Sept. 30, 2013 Order 11 (quoting *Bloch*, 587 F.3d at 783). Such standard should not be applied in the disability discrimination context, Plaintiffs argue. Pls.' Mem. in Supp. Mot. Recons. 4–5.

Plaintiffs point to no controlling precedent indicating that *Bloch*'s enunciation of the elements of a § 3617 claim does not apply to disability discrimination, a distinction *Bloch* itself nowhere draws. Indeed, the only mandatory authority Plaintiffs cite is *Alexander v. Choate*, 469 U.S. 287, 295 (1985) ("Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtfulness and indifference— of benign neglect.") *Alexander*, however, interpreted the Rehabilitation Act of 1973, not the FHA, and Plaintiffs' quoted statement prefaced its holding that some types of disparate impact

9

would support a claim under 29 U.S.C. § 794. 469 U.S. at 289, 299. By contrast, the Seventh Circuit has held that intentional discrimination "is an essential element of a § 3617 claim." *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005). Moreover, the Court recognized in its dismissal order that Plaintiffs could establish a § 3604 violation by showing disparate impact, but expressly found that the Complaint failed to raise a disparate impact theory. Sept. 30, 2013 Order 11. Plaintiffs do not argue that the Court erred in this conclusion.

Because Plaintiffs have not established a "manifest error of law or fact," there is no basis for reconsideration and the Court's dismissal of their FHA claims stands. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.

### C. Leave to Amend Complaint

In the alternative, Plaintiffs seek leave to submit a Second Amended Complaint that alleges the Private Defendants' animus toward Wilson's mental handicaps. *See* Pls.' Mem. in Supp. Mot. Recons. 5–6. Specifically, the Second Amended Complaint would allege that the Private Defendants acted as they did on September 26, 2009, "because of Wilson's disabilities," Pls.' Mot. Recons., Ex. 1 at 14, ECF No. 59-1, and that Hanson "harbors discriminatory animus toward Wilson due to Wilson's disabilities," *id.* at 3. Plaintiffs argue that these allegations are supported by emails from Hanson showing his impatience with Wilson's use of his mental handicap as an excuse, and his disbelief that Wilson's condition existed or was as severe as he represented. Pls.' Mem. in Supp. Mot. Recons., Ex. A, ECF No. 60-1. Plaintiffs also point to Johnson's deposition testimony that Hanson told him that Wilson "tends to fake seizures when he gets in a stressful situation." Johnson Dep. 52:15-16, ECF No. 60-2.

The newly inserted allegations that Defendants acted "because of"—or, similarly, "due to"—Wilson's disability are merely legal conclusions not entitled to the assumption of truth on a

motion to dismiss. *See Brooks*, 578 F.3d at 581. The alleged facts have not changed. The exhibits Plaintiffs reference help support an inference that Hanson thought Wilson was faking the symptoms of his OCD and conversion disorder. However, neither these exhibits nor the proposed amended allegations indicate that Hanson's attitude toward Wilson's handicap played any part in motivating the Private Defendants' actions against Wilson. As explained, nothing about Defendants' alleged threats, harassment, or repossession efforts suggests that they were particularized to a mental-handicap sufferer. By contrast, Defendants' actions are far more plausibly explained by personal animus and Hanson's desire to regain possessions he claims entitlement to. *See Twombly*, 550 U.S. at 567; *see also Bloch*, 587 F.3d at 786 (noting that evidence of personal animus could undermine a claim of intentional discrimination because "one could assume that the harasser acted out of personal spite instead of improper prejudice").

In short, Plaintiffs' argument ignores the connection between disability and misconduct implied by "because of" in § 3604(f), as well as the Seventh Circuit's requirement that § 3617 claims state interference "on account of" the plaintiff's protected status, *see Bloch*, 587 F.3d at 783. *Cf. Wisc. Comm. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) ("[U]nder our Title II case law, the 'on the basis of' language requires the plaintiff to show that, 'but for' his disability, he would have been able to access the services or benefits desired."). Even if Hanson's disbelief that Wilson was really handicapped constitutes disability animus, such animus had no plausible bearing on Defendants' alleged deprivation of housing or its enjoyment. *See Twombly*, 550 U.S. at 567. Because Count II in the Second Amended Complaint would still fail to state a claim for relief under §§ 3604(f)(1)–(2) or 3617, much less survive summary judgment, amendment would be futile. *See Bethany Pharmacal Co.*, 241 F.3d at 861. Accordingly, Plaintiffs are denied leave to amend their Complaint.

## CONCLUSION

Plaintiffs' Motion for Reconsideration, ECF No. 59, is DENIED.  Plaintiffs' request for leave to amend their Complaint is also DENIED.


Entered this 26th day of September, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
